Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4785 | **DATE** | Jan. 3, 2002 |
| **CASE TITLE** | Winthrop Resources   v   Lacrad International | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing ~~held and continued to 1/25/02, at 2:30 p.m.~~
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Memorandum opinion and order entered. Accordingly, the motion to dismiss of defendants Dixon, Whitehead and Blank is granted with respect to counts III and V and denied with respect to counts I, II and IV. Defendant Brown's motion to dismiss count III is moot and denied. Plaintiff is given leave to file amended complaint by 1/31/02. Defendants' response is due by 2/14/02.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JAN 07 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WINTHROP RESOURCES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 01 C 4785 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| LACRAD INTERNATIONAL CORPORATION, LACRAD INTERNATIONAL HOLDING CORPORATION, RODNEY T.E. DIXON, WILLIAM H. BLANK, PREMIER AEROSPACE & LOGISTICS CORPORATION a.k.a. PREMIER SYSTEMS, RONALD MAYS, CHENISE WHITEHEAD, NADINA BROWN, C&C ACCOUNTING a.k.a. C&C FINANCIAL SERVICES, AND ZIANTECH SYSTEMS, | ) DOCKETED JAN 0 7 2002 |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Winthrop Resources Corporation has filed a complaint against Lacrad International Corporation ("Lacrad")[1], Lacrad International Holding Corporation ("Lacrad Holding"), Rodney T.E. Dixon ("Dixon"), William H. Blank ("Blank"), Premier Aerospace & Logistics Corporation a.k.a. Premier Systems ("Premier"), Ronald Mays ("Mays"), Chenise Whitehead ("Whitehead"), Nadina Brown ("Brown"), C&C Accounting a.k.a. C&C Financial Services ("C&C"), and Ziantech Systems ("Ziantech"). Plaintiff's complaint alleges fraud (Count I), conspiracy to defraud (Count II), violations of the Racketeering, Influence and Corrupt Organizations Act, 18 U.S.C. §1961(3) ("RICO") (Count III) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Consumer Fraud Act") (Count

---

[1] On June 12, 2001, the court granted the emergency motion for the appointment of a receiver filed by the plaintiffs in the related case of B.E.L.T., Inc., et al. v. Lacrad Int'l Corp., 01 C 4296, appointing Mr. Alex Moglia ("Mr. Moglia") as receiver for Lacrad.

IV), and a general claim seeking punitive damages (Count V). Defendants Dixon, Whitehead, and Blank have filed a motion to dismiss each count of plaintiff's complaint.[2] Defendant Brown has also filed a motion to dismiss Count III. For the reasons explained below, the motion by Dixon, Whitehead, and Blank is granted in part and denied in part, and Brown's motion is denied as moot.

## FACTS[3]

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiff's complaint alleges what can best be described as a fraudulent sale and lease-back scheme perpetrated in part (to varying degrees and via various roles) by each defendant. According to plaintiff, defendants induced plaintiff to finance the purchase of, and then execute the lease of, certain computer equipment from and to Lacrad for over $2.9 million. Plaintiff alleges that defendants accomplished this feat by providing plaintiff with false and misleading Lacrad financial statements, with false proof that Lacrad purchased the equipment from Premier, and also by making false warranties to plaintiff that it held the right and title to, as well as the interest in, the equipment for the duration of the lease agreement between plaintiff and Lacrad. Plaintiff further contends that defendants successfully executed the same scheme against other

---

[2] Lacrad was originally a party to this motion but on November 9, 2001, the receiver, Mr. Moglia, filed notice of withdrawal from participation in the motion.

[3] Below is a brief summary of the facts plaintiff alleged in its complaint; more detailed facts are discussed throughout the body of this opinion as necessary.

creditors, such that several creditors were similarly induced to finance the purchase of, and then execute the lease of, the same pieces of equipment from and to Lacrad.

**LEGAL STANDARD**

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiff's allegations entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

**DISCUSSION**

As explained below, the court need only address the dismissal arguments of defendants Dixon, Whitehead, and Blank.

**I. Counts I, II, and IV – Plaintiff's Common Law Fraud and Consumer Fraud Act Claims**

According to defendants Dixon, Whitehead and Blank, plaintiff's fraud allegations should be dismissed because they fail to comply with the specificity requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Seventh

3

Circuit has held that the relevant circumstances constituting fraud or mistake include, "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation and citation omitted).

Defendants' argue that Counts I, II and IV of plaintiff's complaint lack "allegations related specifically to actions taken by the individual [d]efendants." Defendants also point out that many of plaintiff's allegations "are either conclusory or [made] upon information and belief." The court agrees with defendants' observations generally, but denies their motion to dismiss Counts I, II and IV on these grounds.

Defendants are correct that plaintiff's complaint does not include a detailed description of what role each defendant played in planning or executing the fraudulent sale and lease-back scheme alleged. The reason for this is simple, however: these details are in the exclusive possession of defendants, and therefore plaintiff is not required to allege them under Rule 9(b). See Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1051 (7th Cir. 1998). Likewise, while defendants are correct about many of plaintiff's allegations being conclusory or made upon information and belief, Rule 9(b) allows plaintiff to aver "malice, intent, knowledge and other condition of mind of a person" in general terms.

For example, plaintiff alleges in Count I that, "On information and belief, Defendants Lacrad, Blank, Dixon, Whitehead, Brown, Premier, and Mays made or knowingly adopted intentional misrepresentations in the [f]inancial [s]tatements sent to [plaintiff]." This allegation may lack the specificity typically required under Rule 9(b), but it is nonetheless satisfactory in

4

the instant case because the facts alleged are within the exclusive control of defendants. If the court assumes that these allegations are true (as the court must at this stage), all plaintiff can know for sure is that it was provided Lacrad financial statements that contained material misrepresentations and that at least some of the individuals working for Lacrad (Dixon, Whitehead, Blank and Brown) and Mays, who initiated the lease deal with plaintiff on behalf of Premier and Lacrad, were aware of that fact. Thus, under Corley, 142 F.3d 1041, plaintiff's averment is enough. Moreover, Rule 9(b)'s exception applies here because the allegation covers the state of mind of several defendants.

Finally, the court notes that plaintiff has attached to its complaint the documents it alleges to be the instruments of the fraud in the instant case, including the allegedly false and misleading Lacrad financial statements. These documents, combined with plaintiff's allegations, accomplish the goal of providing the individual defendants with fair notice of the allegations against them, which is "'perhaps the most basic consideration' underlying Rule 9(b)." Vicom, 20 F.3d at 777-78 (quoting 5 Wright & Miller, Federal Practice and Procedure §§ 1298, at 648 (1969)).

For these reasons, the court denies defendants' motion to dismiss with respect to Counts I, II and IV of plaintiff's complaint; these claims allege fraud with sufficient particularity under Rule 9(b).

## II. Count III – Plaintiff's RICO Claim

Dixon, Whitehead and Blank next take issue with plaintiff's RICO claim, which is premised upon 18 U.S.C. §1962(c). Section 1962(c) makes it unlawful for

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

5

participate, directly or indirectly, in the conduct of such enterprise's affairs
through a pattern of racketeering activity or collection of unlawful debt.

According to defendants, plaintiff has failed to plead a sufficient pattern of racketeering activity because a RICO conspiracy lasting "three months is not sufficient for the pattern of racketeering requirement." Plaintiff refutes this assertion, insisting that the pattern of racketeering activity alleged is sufficient.

The Seventh Circuit has addressed this issue, noting that "precious little" guidance is given in the RICO statute about what constitutes a pattern of activity. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1022 (7th Cir. 1992). All that the RICO statute requires is for plaintiffs to allege two or more predicate acts within a ten-year period. See 18 U.S.C. §1961(5). Courts have expanded upon this requirement, however, instituting what is referred to as the "continuity plus relationship" test to limit the application of RICO to long term criminal conduct. Midwest, 976 F.2d at 1022. The continuity plus relationship test requires plaintiffs to allege that the predicate RICO acts are "related to one another (the relationship prong)" and "pose a threat of continued criminal activity (the continuity prong)." Id. (citing H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985)).

The relationship prong is uncontested in the instant case. The numerous acts of fraud alleged undoubtedly "have the same or similar purposes, result, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Corley, 142 F.3d at 1048 (quoting H.J., Inc., 492 U.S. at 240). Instead, defendants challenge the continuity aspect of the pattern requirement.

The Seventh Circuit has explained that the continuity aspect "is both a closed-and-open-ended concept, in that it refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Corley, 142 F.3d at 1048 (quoting H.J., Inc., 492 U.S. at 241). Defendants argue that plaintiff's complaint has not met the requirements of either the closed-ended or the open-ended types of continuity required under Corley. The court agrees.

Plaintiff's open-ended continuity theory requires plaintiff to show: (1) a "specific threat of repetition"; (2) that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business"; or (3) that the defendant operates a "long term association that exists for criminal purposes." Midwest, 976 F.2d at 1023 (quoting H.J., Inc., 492 U.S. at 242-43); see also Vicom, Inc., 20 F.3d 782 (7th Cir. 1994).

Plaintiff cannot show any of the above based on the facts it has alleged. First, there is no specific threat of repetition in the instant case because the RICO enterprise alleged is Lacrad, which was in receivership by order of this court on the date this case was filed. Lacrad has therefore ceased participating in (and in fact is no longer able to participate in) the activities about which plaintiff complains. See McDonald v. Schencker, 18 F.3d 491, 497-98 (7th Cir. 1994) (finding that once defendant was fired, there was no longer any "threat of repetition" for his scheme); Midwest, 976 F.2d at 1025 (holding that when defendant resigned, any threat of illegal activity "ceased to exist"). Second, plaintiff has not asserted that defendants' alleged predicate acts are part of an ongoing entity's regular way of doing business; defendants' acts may have been part of Lacrad's regular way of doing business, but as explained above that entity is no longer "ongoing." And, finally, plaintiff has not alleged any facts indicating that the association

7

among these particular defendants is "long term" or that it "exists for criminal purposes." Instead plaintiff's complaint indicates that the opposite is true by alleging that defendants' past association has ended and that Dixon individually is now looking for new, unlawful associations. For example, plaintiff alleges that, "Dixon is in the process of soliciting new 'partners' with whom he can establish new business ventures which will be created for the express purpose of laundering the money received from the victims of [d]efendants' fraud and otherwise furthering and aggravating the civil wrongs that have already been committed." Thus, plaintiff's open-ended theory fails.

Next is plaintiff's closed-ended continuity theory. To support this theory, plaintiff must "prove a series of related predicates extending over a substantial period of time." H.J. Inc., 492 U.S. at 242. Factors to be considered here are the "number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986).

Plaintiff's complaint alleges several predicate acts—comprising one or possibly several schemes—spanning a few months with approximately four victims, each with its own injuries. A conspiracy of this short duration does not amount to a RICO claim, however. As mentioned above, Congress was concerned with long term criminal conduct when it enacted RICO. H.J., Inc., 492 U.S. at 242; Williams Elecs. Games, Inc. v. Barry, 42 F. Supp. 2d 785, 795 (N.D. Ill. 1999). Accordingly, the Supreme Court has cautioned that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J., Inc., 492 U.S. at 242; see also Miller v. Gain Financial, Inc., 995 F.2d 706 (7th Cir. 1993).

Following the Supreme Court's lead, the Seventh Circuit has held that duration is "the single most important aspect of the closed-ended continuity analysis." Vicom, Inc., 20 F.3d at 781. Indeed, a scheme that allegedly lasted nine months was held to be too short in duration in Midwest, 976 F.2d at 1024, and another allegedly lasting seven to eight months was held to be "precisely the type of short-term, closed-ended fraud that, subsequent to H.J. Inc., this circuit consistently has held does not constitute a pattern."

Plaintiff cites Pelfresne v. Vill. of Rosemont, 22 F. Supp. 2d 756 (N.D. Ill. 1998), for the contention that the closed-ended continuity requirement is satisfied "by two predicate acts occurring within a three-month span." This is simply wrong. In Pelfresne the defendants' various schemes to wrongfully acquire the plaintiff's property lasted nearly twenty years. Id. at 759. Further, with respect to the plaintiff's failure to allege more than two recent acts of mail fraud in Pelfresne, the court even noted that it was, "concerned by plaintiffs' failure to describe more than two recent acts of mail fraud in light of the breadth of the scheme alleged," and suggested that the plaintiff's allegations "concerning the filing [of] false affidavits with taxing authorities, for example, ought to correspond to alleged predicate acts of racketeering." Id. at 763 n.9. Thus, Pelfresne fails to revive plaintiff's closed-ended continuity theory.

In conclusion, the court agrees with defendants that plaintiff's allegations are insufficient to satisfy the closed- or open-ended types of continuity required under the continuity plus relationship test. As a result, plaintiff has not pleaded a viable pattern of racketeering conduct

9

under RICO, and Count III is dismissed.[4]

### III. Count V – Plaintiff's Punitive Damages Claim

The court will not waste time dealing with Count V, plaintiff's inartful claim for punitive damages. The court agrees with defendants that there is no such independent legal claim in Illinois. See Florsheim v. Travelers Indemnity Co., 393 N.E.2d 1223-1233 (1979). If plaintiff wishes to seek punitive damages under any of the remaining counts in the instant suit, plaintiff must amend its prayer(s) for relief in accordingly.

### IV. Defendants' Argument that Res Judicata and Collateral Estoppel Principles Bar Plaintiff from Raising These Issues and Claims

The last arguments made by Dixon, Whitehead and Blank in support of their motion to dismiss are that plaintiff is "collaterally estopped from relitigating the claims in its complaint" and/or "res judicata bars plaintiff's claims" altogether. Defendants base these assertions on the breach of contract and replevin claims that Plaintiff filed and prevailed on in Illinois state court earlier in 2001. In that action, plaintiff sought and received a judgment entitling it to possession of the equipment and the accelerated balance due under the lease that Lacrad breached. According to defendants, because plaintiff prevailed in its earlier suit, the doctrines of res judicata and collateral estoppel bar plaintiff's claims in the instant suit.

Res judicata and collateral estoppel are distinguished as follows: "[t]he former precludes entire claims, the latter the relitigation of specific issues." Miller v. Runyon, 77 F.3d 189, 194 (7th Cir. 1996). The Seventh Circuit reviewed the applicable standards for determining if *res*

---

[4] Based on this ruling, the court need not address Dixon, Whitehead and Blank's argument that "Rule 9(b) controls here also and requires RICO plaintiffs to plead their claims with specificity." The court also need not address Brown's attack on Count III, which is now moot.

*judicata* bars plaintiff's claims in Whitaker v. Ameritech Corp., 129 F.3d 952, 955-56 (7th Cir. 1997):

> Since an Illinois state court rendered the initial default judgment, this Court must apply Illinois preclusion law to determine whether *res judicata* bars Whitaker's claims. 28 U.S.C. §§ 1738; Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 381 (1985). In Illinois, res judicata extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation. LaSalle Nat'l Bank v. County Bd. of Sch. Trustees, 337 N.E.2d 19, 22 (Ill. 1975), cert. denied, 425 U.S. 936 (1976). Res judicata bars a subsequent action if three requirements are met: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." Downing v. Chicago Transit Auth., 642 N.E.2d 456, 458 (Ill. 1994). [Citations altered.]

As was the case in Whittaker, the main contention between the parties in the instant case is whether there is sufficient "identity of cause of action"; that is, whether plaintiff's state court claims encompass the claims it is making in the instant suit.

There are two possible approaches the court can use to answer this question. First, the court can follow the "proof" or "evidence" approach, "which asks whether the same evidence will support both claims." Id. at 956 (citing Torcasso v. Standard Outdoor Sales, Inc., 626 N.E.2d 225, 228 (Ill. 1993); Rodgers v. St. Mary's Hosp., 597 N.E.2d 616, 621 (Ill. 1992)). The second option is a broader approach, termed the "transactional" approach, which "considers whether both suits arise from the same transaction, incident, or factual situation" because "'different kinds of theories of relief still constitute[] a single cause of action if a single group of operative facts give rise to the assertion of relief.'" Whittaker, 129 F.3d at 956 (quoting Rodgers, 597 N.E.2d at 621).

11

Starting with the proof/evidence approach, the court finds that the same evidence that supported plaintiff's state court suit against Lacrad will not adequately support plaintiff's fraud claims in the instant suit. To succeed in its state court claims for breach of contract and replevin, all plaintiff needed to do was to demonstrate that it entered into a lease agreement with Lacrad, Lacrad breached the agreement, and under the terms of the agreement plaintiff was entitled to a judgment of replevin for the equipment and the accelerated balance due on the lease. Plaintiff's instant fraud claims, on the other hand, require evidence that defendants intentionally made or adopted material misrepresentations in order to fraudulently induce plaintiff into financing the supposed purchase of the equipment. Thus, plaintiff's current claims pick up where its prior claims left off, requiring proof of different allegations to satisfy different causes of action.

Defendants insist that <u>Whittaker</u> requires the court to find that the doctrine of res judicata bars plaintiff's claims. The court disagrees. While it is true that the court in <u>Whittaker</u> dismissed the plaintiff's RICO claim because it found that she should have made her fraud allegations in the state court proceeding, <u>Whittaker</u> is distinguished from the instant case. See <u>Whittaker</u>, 129 F.3d at 456-457. In <u>Whittaker</u> the state court suit was filed by the defendant to the federal court suit. <u>Id</u>. It was only after the state court entered a default judgment against the plaintiff in <u>Whittaker</u> that she filed suit in federal court. <u>Id</u>. Importantly, the federal suit the plaintiff filed in that case sought relief that would have contradicted the state court's finding; whereas the state court concluded that the plaintiff owed the defendant a valid debt, the plaintiff's federal suit sought a finding that the plaintiff was fraudulently induced into acquiring that debt by defendant. <u>Id</u>. Accordingly, the federal court in <u>Whittaker</u> concluded that if plaintiff had some sort of defense to owing the debt, she should have raised that defense in the state court proceeding. <u>Id</u>.

Unlike in Whittaker, the instant case involves a plaintiff who filed two different suits (one in state court and one in federal court), alleging different claims (an action for breach of contract and replevin, and an action for fraud and, unsuccessfully, RICO), the latter picking up where the former left off. Hence, Whittaker is distinguished and therefore unpersuasive. The court concludes that the evidence that supported plaintiff's state court claims is not the same as the evidence required to support plaintiff's instant claims. Accordingly, defendants' dismissal argument fails under the proof/evidence approach to the doctrine of res judicata.

The same outcome results from applying the transactional res judicata approach. The question under this approach is whether both suits arise from the "same transaction, incident, or factual situation"; that is, whether a "single group of operative facts" entitle plaintiff to the relief it sought in state court and the relief it seeks in the instant suit. Id. Again, the court answers this question "no."

The relief plaintiff sought (and received) in state court was an order requiring Lacrad to pay the accelerated balance due on the breached lease agreement and further entitling plaintiff to regain possession of the equipment. The transaction, incident, or factual situation entitling plaintiff to that relief was Lacrad's breach of the lease agreement by failing to make successive payments. In contrast, the relief sought by plaintiff in the instant suit is its actual and consequential damages, as well as any punitive damages to which it is entitled, for defendants' fraudulent conduct. The transaction, incident, or factual situation allegedly entitling plaintiff to this relief is defendants' intentional misrepresentations, which fraudulently induced plaintiff to (re)purchase and then (re)lease the equipment to Lacrad.

Although it is true that—looking at both causes of action in the most general sense—they both arise out of the purchase and lease-back arrangement between the parties, there is a fundamental difference between Lacrad having breached its lease agreement and the individual defendants having conspired together to fraudulently induce plaintiff to enter into that agreement in the first place. Once again Whittaker, which was cited and relied upon by defendants in support of the instant motion, proves instructive. In facing a nearly identical argument, the court in Whittaker distinguished between the plaintiff's challenge to the validity of the debt that she owed to the defendant and her claim that the defendant violated the FDCPA by using unfair practices to collect that debt. See 129 F.3d at 458. The Whittaker court held that to lump an action for breach of contract with an action alleging fraud and conspiracy to defraud "together as the same cause of action under the res judicata analysis is to give res judicata broader sweep than . . . the Illinois courts are willing to give it." Id. The court agrees and therefore concludes that plaintiff's fraud claims are not barred by the doctrine of res judicata.

Last is defendants' collateral estoppel argument. Collateral estoppel prevents a party (most typically the loser of a prior suit) from relitigating a claim that has already been decided on its merits by a court of law. See Homola v. McNamara, 59 F.3d 647, 651 (7th Cir. 1995). Defendants cannot reap the benefits of collateral estoppel in the instant case, however, because, as explained above, the claims filed and relief sought in the instant case are different from those litigated in plaintiff's state court case against Lacrad. Consequently, plaintiff is not estopped from litigating its fraud and conspiracy to defraud claims against defendants.

## **CONCLUSION**

In conclusion, the motion to dismiss by Dixon, Whitehead and Blank is granted with respect to Counts III and V, but denied with respect to Counts I, II and IV. Given this ruling, Brown's motion to dismiss Count III is moot and therefore denied. Plaintiff is given leave to file an amended complaint that renumbers Count IV as Count III and incorporates plaintiff's prayer for punitive damages claim to Counts I, II, and III, as appropriate. Plaintiff shall file its amended complaint on or before January 31, 2002, and defendants shall respond thereto on or before February 14, 2002.

**ENTER:** **January 3, 2002**

**Robert W. Gettleman**
**United States District Judge**